Here ye, here ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Robert D. McClaren, if you'd like. Please be seated. Your Honor, the second case on the docket this morning, C-23-0125, People of the State of Illinois Plaintiff Appellee v. Jorge Hernandez-Chirinos, Defendant Appellant. Arguing on behalf of the Appellant, Mr. Jason S. Dreyfuss. Arguing on behalf of the Appellee, Ms. Diana L. Campbell. Mr. Dreyfuss, you may proceed. Thank you, Your Honor. Counsel, may it please the Court. This morning I'm going to use my argument time to focus on the Rule 106 and Completeness Doctrine issue. I think that the ineffective assistance issue will probably bleed in a little bit at times. And to begin my argument, I'm going to start with a couple quotes from the record. I'll keep them brief, I promise. Before you quote from the record, let me ask you this. Is there any reference to Illinois Rule of Evidence 106 in either the common law record or in the report of proceedings? There is not. So I concede that the number 106, not in the record at all. So it's clear that the common law is what the Court was ruling on? Not at all, though. I disagree. Why is that? Because what counsel asked for during the hearing on the first day of trial was, we would like VSI number 2 played immediately after VSI number 1 during our opponent's case in chief. That request is what Rule 106 says. So, sure, they didn't say Rule 106. They didn't use that magic word. They didn't say the number. But what they're requesting is a Rule 106 request. You argued 106 here for the first time on appeal. Yes. Why isn't that waived? Because it's plain error. Counsel, there are dozens of cases since Rule 106 went into effect applying the common law. Right. Reported decisions. So here's why this is unique. It's more like what this Court discussed in Cragen because it was a separate statement at a separate time. So I think that the ought in fairness, a separate statement at a separate time type of consideration is not what the common law considered. Or, sorry, contemplated. So that's why, so I guess for two reasons it's a 106 issue. One is what the Court said in Cragen as to why this is under Rule 106 is when you are asking for it in your opponent's case in chief, I believe that brings it into 106. And number two is the distinction, as I read Cragen, is if it is a recorded statement as opposed to, say, an oral statement, I think that also would bring it into 106. And the other distinction here is because it is a separate statement made nearly 30 days later, it's got to be a 106 request because the common law... Once you say it has to be, it has to be. Well, if there's no reference in the record and you don't argue ineffective assistance of trial counsel for that purpose, for not asking for a 106 evaluation, correct? I'm sorry, can you repeat the question? You haven't argued and did not argue in your brief that counsel was ineffective for not mentioning or not pointing to 106 to allow the V.S. 2 to be claimed immediately after the first? I don't think that counsel needs to say certain magic words to cite to a specific rule. The trial counsel asked for particular relief. They approached the judge. They said, we just learned, despite all of this court's pretrial rulings, we just learned that they're only going to play V.S. 1 during their case in chief. We think fairness demands that they play V.S. 2 contemporaneously during their case in chief. The court clearly said that will be available for cross-examination and impeachment. But of course it is. I mean, but that's, it has to be. The jury knew, the jury knew the information that was critical to the defendant's case, that it was his brother who impregnated the victim. Well, so I guess, I guess that's sort of what I'd like to do is, we can sort of quibble about whether the issue of 106 was raised adequately in the record or not. I would like to move to the plain error issue and look at the actual evidence here, because all of the evidence in this case is essentially 11510 evidence. It all boils down to... J.B. testified. What do you mean? She testified and confirmed what she said about what happened to her. Correct. So, if we're going to look at the strength of the evidence in this case, you have J.B.'s testimony, and then you have 11510 testimony. You have Lakeisha Wilkerson, the forensic interviewer. You have her mother, who's also giving 11510 testimony. You have the police officer who's giving some 11510 testimony. And then you've got some of her friends who are giving some 11510 testimony. And then the BSI, which is some of the most powerful 11510 testimony. But then the jury doesn't get to see the other BSI? The jury would get it if the defense had asked for it. Right. And that's the argument that the state makes, is that somehow it's the burden of the defendant... It's the burden of the defendant on appeal to show error. It's your burden here. It's my burden to show the court's error. And the court erred by keeping BSI number two from the jury. And what is the standard of review for that determination? The plain error issue? No, the abuse of discretion issue. Relative to evidentiary matters, is it not true that the standard of review relative to how or what or what the nature and extent of evidence is that is presented is an exercise of discretion? So if it's an exercise of discretion, you have said it, but you should say it, is that the way in which the trial court judge decided to allow it into evidence, which was in the manner and form of impeachment, and not present it by the state in such a way as it would make it look like the state was proffering this for illegal or inadmissible means, because V.S. 2 also is a prior consistent statement or a subsequent consistent statement which reaffirms. And therefore, if your attorney, who is exercising strategy, may determine that on whole V.S. 2 portrays this child as betwixt and between and decide that it's not in his client's best interest to hear a reaffirmation in V.S. 2 of what she said in V.S. 1. I think if the state had asked for an advisory ruling about what the jury should consider V.S. 2 for, there might have been a ruling that it's only there to impeach. It is not there for substance of evidence to determine whether or not your client was involved in the crimes that were alleged. I.e., for instance, the man wasn't charged or the defendant wasn't charged with impregnating the girl. So therefore, V.S. 2 really is not as relevant or material as you would suggest. So I understand everything the justice has said. Right. And in terms of the standard review, it's got to be arbitrary, fanciful, unreasonable. No reasonable person, no reasonable jurist or person, sorry, would do this. And that would bring me back to the quotes I wanted to start with. And I direct the court's attention to some of the things that the trial court said during its January 30th hearing on the rape shield at record page 108 and 109. The court said, quote, on line 22 to line 23, quote, the statements about brother and stepdad are inextricably intertwined, end quote. And then on page 109, beginning on line 6, quote, but I don't see any way that we can take a razor to this statement. The 115.10 statement or her initial statement at this point or her testimony, the defense is entitled to impeach her anyway. They are too inextricably wound. So the judge is saying he... reaffirmed what she said in the first one. So if that isn't inextricably entwined, I don't know what is unless you are going to argue they're inextricably entwined because in the second one, she diametrically denied what she had said in her first one. That would also mean that they were intertwined. Of course the similarities are inextricably wound. But also inextricably wound are the allegations concerning stepbrother. Okay. I want to ask you this. Is the completeness doctrine concepts in Rule 106 even applicable here? When you look at the record, the point of these concepts is to put already admitted evidence into the proper context and prevent the jury from being misled. The jury was not misled. Was it? The idea... Those are the concepts behind Rule 106. Right. So... It was a stipulation. So... And cross-examination. The jury was not misled. If cross-examination could cure this issue always, then Rule 106 would never exist. But Rule 106, again, the purpose behind the rule is to prevent the jury from being misled. Right. But my response is, what I'm hearing the court say is, you can achieve the same aims through cross-examination. And my response is, there's clearly something more in the video recording, in the VSI. Again, but defense counsel did not request to have V.S. 2 played during cross-examination. Sure, they asked... They asked that it be played directly after playing V.S. 1. Right. But not during cross-examination or during the defendant's case in chief. Right. But the defense isn't required to play on any case. Okay? Correct. And so they could sit there and not do anything. And when the state decides to put out evidence, very powerful, among the most potent evidence that comes across any courtroom, child rape case where she's accusing a family member, there's 11510 evidence, and there's a video audio recording, and then there's a confrontation with contradictory DNA evidence, also audio recorded, with the same sort of guardrails, same methodology, same subject matter, same location, but the jury doesn't get to see what the reaction is to that after she's been prepped for months. And then the state's attorney sort of pounces on that opportunity and says, see, well, she was consistent in V.S.I. number one, and then she was consistent in trial. She was thoroughly cross-examined by the defense counsel about her hesitancy. She did not want to disclose that her half-brother was the father of the child. I mean, it was a lengthy cross-examination, and it was up to counsel as to whether or not he was going to request it be played. So it was a lengthy cross-examination, maybe, but you can only ask so many questions about you were parodied for 10 minutes. You can't ask 10 minutes of questions like that. It's one thing to ask a question like that and get a response. It's another thing to watch. For 10 minutes, the girl swarmed. What was she doing? Was she cuddling? Was she cuddling with one of these support dogs? Was she picking at her nails? Was she sort of sighing and breathing heavily? There are other things that are captured in that V.S.I. that you just don't get from cross-examination. Counsel, you said something, two different things, I believe, that are in conflict. In the recent banter here, you indicated that counsel wasn't required to do what Justice Burkett was suggesting, which was present the tape during the defendant's case in chief, and you said he wasn't required to. Well, when you say it isn't required, aren't you implying, if not inferring, that the tape has no value insofar as relevance or materiality or impeachment? Because if it did, why wouldn't he put it in? I understand my time is up. May I answer your question? That's what we're here for, is for questions and answers. Absolutely, my position is not that it has no materiality. When I say that the defense is not required, the point I'm making is the prosecution has the burden of proof to prove the defendant guilty. When the prosecution puts on evidence that the defense perceives as incomplete, and they move the court to, out of fairness, put in an additional recorded statement because they perceive fairness dictates it, that's still in the state's case in chief. And that notion is because they do believe it's relevant, and they do believe that the jury needs to hear the full and complete picture of what those two statements look like together. Just like any, again, this brings us back to this 106 argument. The trial court said and mentioned that it was not at the same time, not the same day. So he was clearly referring to the common law. And your argument is that the trial court should, on his own, suggest that maybe it should come in under 106. That's your argument, right? That the trial court has to, I don't think it's a far leap to expect the trial court judge to know about Rule 106 when it, yeah. It's counsel's responsibility to make an objection and to make a foundation. It's counsel's obligation to lay a foundation for the admissibility of evidence, not the trial court's. Correct? Yes. I believe that the trial counsel asked that this come in during the case in chief. I concede that he did not mention Rule 106. I'd ask that you reverse his conviction, order that BSI number two be admitted, and order a new trial. Thank you. Do you have any questions? No. Thank you. Thanks. Thank you. You'll have an opportunity to make rebuttals, sir. Ms. Campbell, you may proceed. Good morning, Your Honors Counsel. My name is Diane Campbell. I'm with the State's Attorney's Appellate Prosecutor, representing the people of the state of Illinois this morning. I think Your Honors have a very good grasp of my forfeiture argument. I phrased it as invited error simply because of the way the defense counsel had phrased it as the trial court was preventing him. Did you discuss strategy? Excuse me? Relative to the defense counsel, he was told the evidence wasn't going to go in the way he wanted it to. But there appears to have been an alleyway that he could have made a delivery at the back door, and he decided not to make the delivery at the back door. So the question I have for you is, what would you call that? Would that be strategy? It is. Did you put that in your brief? I did. Okay. Let me focus on the Rule 106. My argument is, of course, that he did not mention it, and a specific objection bars the defendant from raising another possible objection on appeal. But to get to the Rule 106. With respect to the request, the defendant is entitled to a fair trial, correct? He is. And the state has an obligation to make sure that the defendant gets a fair trial, even in the state's case-in-chief. He is, and they did. And that was a reasonable request, was it not? It was a request, but it was up to the trial court's discretion, and his decision here was not fanciful or unreasonable due to the protective measures that the state had outlined. Counsel, have you ever run into a reasonable request that was denied? That is why there are certainly cases on appeal, because there's differing opinions on what is reasonable or not. Well, let's assume from the moment that there was a reasonable request and it was denied. Would that in fact make it an abuse of discretion? Let's put it another way. I'm going to ask you a question. Is this coffee mug half empty or half full? I do not know. But if I showed it to you and it was right in the middle, it was at the median or the mean, what would your answer have been? It is both half empty and half full. Okay, you're sneaky. The point is that if you said one or the other, the trial court judge could have said, no, it's the other, and it wouldn't necessarily be an abuse of discretion. I don't think that the situation is anywhere that close to, and if you'll allow me, I will tell you exactly what the circumstances were. In the final pretrial, the state had announced the protective measures that it intended to implement, and that is that it was going to present the first VSI before the victim testified so that it could then examine her and question her on the very fact that she had not disclosed her half-brother's sexual abuse to her in the first VSI. And that was, in fact, implemented. What about counsel's argument that regardless of the state's concession and the stipulation, the jury should have been allowed to see how uncomfortable she was in the video? Is that one of the purposes of 106, or is that? One of the purposes, and in Corrigan it says at 48, the purpose of Rule 106 is not a means to admit evidence that aids the defendant in proving his theory of the case. The purpose is to correct the misleading nature of a recorded statement that has been taken out of context or is difficult to understand on its own. And here, there was no misleading. It was not difficult to understand on its own because of the way the state had set up its introduction. Wilkerson testified that she had not asked J.V. whether anyone else was sexually abusing her at the time of the first interview, despite that being standard operating procedure. She also testified that J.V. did not tell her about the sexual abuse by her stepbrother during VSI 1. And then immediately following that was the testimony of J.V. She testified extensively. In particular, she testified that, let me find it, the victim testified she told the truth in the first interview about what the defendant did to her but did not tell that her brother did anything inappropriate to her. That was specifically at 442 and 443 and 515. I included her press examination on that as an appendix to my brief. So in this case, as your honors noted, there was no misleading. It is not difficult for the jury to understand on its own because of that up-fronted explanation. So, you know, they are not operating under some misguided things. Your honors indicated that the defense counsel could have sought its admission during cross-examination. It could have done so on its own case. As a strategic choice, it did not. You say in your brief that if V.S. 2 was played, it would engender sympathy for the victim and that it would have been damaging to the defense case. If it was so damaging to the defense case, then why did the state object to playing it right after V.S. 1? I think it was a matter of trial strategy. Quite frankly, it includes... Was it also to protect the victim? It was. It includes a lot of information... Should protection of the victim outweigh the defendant's right to a fair trial and having complete evidence? It did not. In this case, the defendant was not barred from presenting that evidence. He just couldn't do it at the exact moment that he initially desired to do so. That was not fundamentally unfair because it was not being taken out of context. It was not misleading the jury. It was not difficult for the jury to understand on its own. Again, that is the exact strictures or application of Rule 106. Regardless, obviously counsel and I disagree about whether 106 was mentioned or waived, but regardless of that, the judge exercised his discretion. And those are the factors that he knew were taking place when he made that ruling. So again, he did not abuse his discretion. It was not necessary for fundamental fairness. The defendant received a fair trial because he could have introduced that either in his cross-examination or his own case. Counsel, is the rape shield law implicated in this case? It was raised in the initial, in particular in the January 30th hearing. There are some implications, and the courts and the parties were cognizant of that. At no time did defense counsel or the state move for a redacted version. Indeed, it's indicated that the defense counsel was asking for the whole tape to be played at that early period. So it is implicated, but it was not raised as a debated issue in this case. What is the purpose or function of the rape shield? The rape shield is to protect the victim from being harassed regarding sexual conduct that is not relevant. Predisposition? Excuse me? Predisposition? Yes. Well, would this second interview regarding the pregnancy, would that have any effect on her reputation or her disposition or predisposition? In this context, I don't believe so. She was 11 at the time she was impregnated. No one can legally have sexual intercourse with this victim. So anyone who did so, and she is not considered at fault or to blame for that because she is incapable of giving consent. Isn't that the paradigm example as to why the rape shield should be applied? If the victim doesn't even have the power to consent, then why would the rape shield law not be implicated? That was debated at the January 30th hearing. The court found that under the circumstances here where she had not disclosed that he was, I think, bending over backward to protect the defendant's right to a fair trial. I don't necessarily agree with that, but that was what the parties faced going into the trial. And again, the state was taking protective measures to protect the defendant's right to a fair trial. Also to protect their victim. And they had taken those measures. In this case, the victim was extensively cross-examined. The defense counsel had the advantage that he could cherry-pick the portions of the VSI 2 to question her on 4327 to 4422 where she reiterated that she had told the truth in the first statement and that the defendant had sexually abused her. And she also acknowledged that she had not disclosed that abuse in the first sentence. And I agree with defense counsel that it could be powerful evidence, but it would be powerful evidence against this defendant. And that is why his counsel made the strategic decision not to introduce it. Had he done so in his own case in chief, would he have then also called the victim and risked being seen as a mean guy for cross-examining her again. It would have opened the door for the state on the rebuttal to play portions of that or to call the victim. And apparently the judge found the victim was exceedingly credible in the post-trial motion. And he, in fact, indicated all of her demeanor at the trial. So that demeanor I do not think, and particularly given her very clear and graphic testimony regarding the defendant's individual five acts against her. In particular, she described the May incident with some very vivid details where there was silence, but she could hear the fish tank in the living room, et cetera, et cetera. I set that out in my brief. One point, you mentioned in your brief that the trial court viewed V.S. 2. I was mistaken in that. The defendant points that out in his reply brief, and it appears we were both a little bit wrong. In the 26th hearing, it is agreed by the parties that the court will view five videos in camera in preparation for the motions in the trial. And those were one video by the victim, and then the four videos of the juvenile outcry witnesses. So I was incorrect. It does not appear that he saw V.S. 2. But certainly since he indicated he intended to view it in camera, I think it's a safe assumption that he did follow through on his word. And that was before the rape shield hearing on the 30th that occurred on the 26th. So, yes, it appears that he did see that. And again, let me see what other... I also take, I think it is offensive that in his reply brief, the defendant refers to the victim as bamboozling everyone for a month. About who was pregnant. This, again, is an 11-year-old child. The defendant was charged with penal penetration of her in December. Statistically and scientifically, the evidence indicates that she was actually impregnated, I think, in January. I think that's her statement that her half-brother had done that in the second interview. So to expect an 11-year-old child to know the gestational periods, to know, you know, the intricacies of pregnancy, how long it would last, what the effects will be, may I finish my thought? I think it's unreasonable. Again, she had disclosed that morning on the 30th for the first time to her mother sexual abuse by her stepfather. She was taken to the hospital. She had a sex assault examination, which is traumatic for anyone, let alone an 11-year-old girl. She and her mother are shocked to find out that she is pregnant. She's then immediately taken to the CDC, sorry, to the Child Advocacy Center for her interview. It starts at 10 in the evening. It ends at 11. Wilkerson was asking her questions regarding the father's sexual abuse of her. Wilkerson never asked her if anyone else was abusing her. My time is up, so do your honors have further questions? Any other questions? Yes. Walk me through the invited error. Okay. In this case... Where did the defense invite? They made the motion. They made the motion. They made the motion. In this case, because in argument one, the defendant framed it as the trial court prevented him from introducing that. That is why I say it is invited error, because, as your honors have noted, he could have introduced it on cross-examination. He certainly could have done it on his own case in chief. So it is not that the trial court prevented him, and this is not exonerating evidence. It certainly indicates the defendant committed all the crimes. So it was the tactical decision to choose not to introduce it on his own. So in that case, where he had the opportunity to do it, he acquiesced to what he purports was a trial court's error. Otherwise, if you don't like that phrasing, it is clearly a waiver. Just very briefly, counsel mentioned in his argument, plain error. Is plain error argued in his brief? I believe he does. I certainly argue plain, yes. And I argue harmless error, because that is part of the Strickland standard. And certainly this case, there is no prejudice to the defendant. He simply was not allowed to do it when he wanted to. The trial court expressed opinions on why that happened, because of the protective measures the state took. So there is no error by trial counsel in not admitting it. There's no error in an abuse of discretion by the trial court. And there's certainly no prejudice, because the defendant had the opportunity to introduce that just a little later. Is there any argument that the evidence was closely balanced? I think perhaps counsel made a token argument about that. He was arguing more on the second prong error for the defendant's constitutional right to present a defense. Certainly I argued that it was not closely balanced. The trial judge's indication regarding the victim's credibility would indicate that he who experienced the trial agreed with that. And he also indicated the short time the jury had been in recess before their verdict as an indication that they also found her convincing. Thank you. Mr. Dreyfuss, you may proceed with the buck. Thank you. Following up on counsel's description of sort of the order of operations as to how trial went, the very first witness during the state's case in chief was Lakeisha Wilkerson. That is the forensic interviewer. That is the point in time when VSI No. 1 came in. So with respect to the prevention of the jury being misled, that was the opportunity to put in VSI No. 2. Because Ms. Wilkerson did not conduct VSI No. 2. An entirely different forensic interviewer did that. So it's not one of these cases where VSI, where the VSI came in under, came in on the victim's testimony, came in on the forensic interviewer's testimony. She had nothing to say about the second VSI. And so that is why it would have been important for the second VSI to be introduced at that time during Ms. Wilkerson's testimony. Contemporaneously with VSI No. 1. Counsel, from what you just said, it sounds like if the V.S. 2 was presented at that time, that the witness during whose testimony it was presented would have what knowledge and could be cross-examined and impeached how? So she would not have personal knowledge about that statement. But in terms... If she didn't, how could she be impeached? What's the point of cross-examining somebody who wasn't present during the conversation that was recorded? Well, you can put limits on the cross-examination. But in terms of putting on the evidence at the appropriate time, okay, contemporaneously with VSI 2, as Rule 106 contemplates, we believe that immediately following VSI No. 1 was the right time. Well, I'll go one step further. If that's the appropriate time, then if it is the appropriate time, then it apparently is okay to present evidence which upon redirect examination of the witness, which appears to be impossible because she had no knowledge of that particular tape, would suggest that the State is at a critical disadvantage because the tape goes in simply for what it is and there could be no rehabilitation or no further comment. So explain to me how this is an appropriate time under those procedural circumstances. I don't think there's another time to put it in. It would be the same if she wrote a written statement. There's no other time to put it in. If she had written a handwritten statement during her first appointment and then came in a month later and wrote a second handwritten statement and left it with a forensic interviewer, just because it's a video recording, I don't think it changes things. The idea is that I think sort of, I think what is troubling, or maybe I think the issue is, is that it's a sort of longer video recording, but if it were a paragraph written on a piece of paper and then we want to put in the second paragraph, maybe that would cause less consternation. But because we're talking about a full VSI followed by a second VSI, that that is more worrisome. But I don't see the issue. They obviously cannot cross-examine her on it because she wasn't the interviewer. But the purpose is that fairness dictates that immediately, contemporaneously, after viewing item one, you view item two. What about Ms. Campbell's point that by not putting the video in, or the taped conversation, but bringing out the highlights of that, that would impeach the victim while not covering the reaffirmation contained in that conversation? Actually, it was more beneficial to your client than if the entire conversation had been presented, because then there would have been a reaffirmation and essentially a subsequent consistent statement. So I think we're now substituting ourselves for the fact finder. I think there's some other things. No, we're talking about our responsibility to determine whether or not it was reasonable trial strategy and or whether or not if it was error, was it prejudicial? So there would be some other things if I were trial counsel that I would have argued, because when she reaffirms in that VSI, it happens to be right after she goes out to talk to certain people. And those certain people are the investigator, the police officer, the state's attorney. And so it's clear that she goes out to talk to those people and all of a sudden they're in a panic. And you can see, oh, my goodness, she's now just implicated her brother. And so now if I'm trial counsel, I'm going to get up and close an argument and say, you know, she went out into that hallway and the forensic interviewer went out into that back room and they panicked. And they said, you better go in there and make sure that she reaffirms everything she just said about Mr. Hernandez-Chernos. They didn't get to make that argument because the jury never saw VSI number two. Now, that was never, there were no words associated with that action in the forensic interview. Am I to understand that there was an admission that what you've related just now actually took place? Or is there some speculation involved as to what was discussed outside the presence of the conversation? Well, the court's asking me as to whether there would have been some benefit to keep VSI number two out. And I'm telling you that there might have been some beneficial arguments to make for the defendant had it come in. There could be revelations as well, but the point is you're making representations, attempting to establish a rationale for why this is prejudicial. And all I'm asking for is corroboration of what your statement was. So what I'm saying is in defense exhibit, I'm not sure what the exhibit is. I guess it's defense exhibit, I can get back to the court. The VSI number two, what the defense exhibit is that we offered up, that is in the video of the forensic interviewer leaving the room to go talk with some other people. I believe those are her words or something to that effect. And after she comes back, that is when she asks her again to sort of reaffirm or double check whether everything she had previously said about Mr. Hernandez-Chernoz was correct. And in fact, the victim does. And what I'm suggesting this morning to the court is that I think that that cuts both ways. Is that as a defense attorney, I would argue to the jury had that evidence come in that something likely happened when that forensic interviewer left the room. That the people that she talked with. Sorry, that the people that the forensic interviewer talked with sent her back in to really make sure that she could nail down this child so that they didn't lose that prosecution. So that the jury couldn't be misled and think that there was only one perpetrator to the litany of abuses as opposed to more than one. That's the confusion here is whether or not, and it started out with the presumption that since she testified about the stepfather, that he was the impregnator, then they find out that he's not the impregnator. Which based upon the laws of nature and biology mean that she was apparently being abused by an additional one or more parties. And so it's purely logical to suggest that you clarify, okay, how many people were there? Your argument is interesting and enlightening, but I don't really see how it establishes some sort of nefarious scheme. I mean, it's essentially what if I were a lawyer, I would be telling them to do, to find out, is this the only person? Are there anybody else? How is that prejudicial? It's not a scheme. We don't want to blow up our entire investigation over the last month. Let's try and pin this down here. Let's clarify it so we know. What's interesting is you're making an argument which with SB1 there wasn't any questions about was there anybody else, right? So they make a mistake in the first one by not pinning it down to determine whether or not this was the only abuser. Yes, but I guess here's my final point, and I know I'm way over time. The corroboration with respect to Mr. Hernandez-Chernos from the friends is some unspecified touching, and so this isn't an all or nothing thing. He's been convicted of two counts of predatory criminal sexual assault. There's no forensics that support that. There's no eyewitnesses to that effect, and so it's really her statements alone that have convicted him, and the question for the court is whether VSI No. 2 should have come in at that trial. We'd ask that you grant the relief requested in the appeal and reverse his conviction. Thank you. Any other questions? Thank you. Thank you.